Aaron E. Greenleaf v. Commissioner.
Greenleaf v. Commissioner
Docket No. 19498.
United States Tax Court
1950 Tax Ct. Memo LEXIS 45; 9 T.C.M. (CCH) 1024; T.C.M. (RIA) 50275; November 13, 1950
*45 Gross income: Section 22(a): Settlement of lawsuit. - Petitioner received a sum of $18,621.59 in settlement of an action for specific performance and/or damages for breach of contract. Held, that the amount so realized constitutes a gain taxable as ordinary income. Martin M. Lore, Esq., for the petitioner. Thomas R. Charshee, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This case involves a deficiency in income tax for the calendar year 1944 in the amount of $5,795.64, and also petitioner's claimed overpayment in the amount of $1,582.78. The issues presented are whether respondent erred in determining that petitioner derived ordinary income in the sum of $18,621.59 received by him in 1944 in full settlement of a suit for specific performance of a contract and for damages for breach of contract, and in failing to determine that such sum was a reimbursement for a loss of capital. In the alternative, petitioner assigns error in the respondent's failure to determine that such amount constitutes the proceeds from a sale of capital assets held for more than six months, resulting in a capital gain as reported on petitioner's *46 income tax return. The case was submitted upon a stipulation of facts, testimony, and documentary evidence. Findings of Fact The stipulated facts are so found. The petitioner is an individual residing in Murdock, Kansas. He filed his income tax return for the calendar year 1944 with the collector of internal revenue for the district of Kansas. On September 16, 1939, petitioner contracted in writing with Safeway Trails, Inc., a Maryland corporation, referred to herein as Safeway, and with Eastern Trails, Inc., referred to herein as Eastern, and with certain other companies to sell the Safeway all of the capital stock of Eastern, after the merger into Eastern of Nevin Transit, Inc., which merger was thereafter accomplished. All of the companies operated bus lines in the eastern or east central portion of the United States. Eastern and Safeway operated competing bus lines between New York City and Washington, D.C., via Baltimore, Maryland. The pertinent portions of the agreement were: "V. "[Safeway Trails, Inc.] agrees to purchase and [Aaron E. Greenleaf] agrees to sell all of the capital stock of [Eastern Trails, Inc.] after merger into [Eastern Trails, Inc.] *47 of the property of [Nevin Transit, Inc.]. * * * [Aaron E. Greenleaf] also covenants and warrants that on the date of delivery of the said stock, [Eastern Trails, Inc.] shall have acquired all of the property and rights presently owned by [Nevin Transit, Inc.] in accordance with approval by all public authority having jurisdiction. The consideration to be paid by [Safeway Trails, Inc.] to [Aaron E. Greenleaf] under this section shall consist of seven hundred (700) shares of a total of fifteen hundred (1500) shares of the common capital stock of [Safeway Trails, Inc.] having a par value of Fifty ($50.00) Dollars per share. The said seven hundred (700) shares shall be issued free and clear of all encumbrances whatsoever and pursuant to approval of all public authority having jurisdiction, upon tender of delivery by [Aaron E. Greenleaf] to [Safeway Trails, Inc.] of all of the stock of [Eastern Trails, Inc.] in accordance with the terms of this agreement. * * * "V "The parties are agreed that subsequent to the acquisition of the stock of [Eastern Trails, Inc.] by [Safeway Trails, Inc.], as provided in Section IV hereof, [Safeway Trails, Inc.] shall proceed *48 as speedily as may be to procure all consent or approval of the Interstate Commerce Commission, duly constituted State authorities and other interested parties to the merger or consolidation of the properties of [Eastern Trails, Inc.] and of [Nevin Transit, Inc.] (merged into [Eastern Trails, Inc.]), into [Safeway Trails, Inc.]. The said merger shall take place at the earliest practicable date following the procurement of such public and other authority." The Interstate Commerce Commission approved and authorized the proposed merger of Eastern into Safeway provided authority was secured from Maryland and New Jersey regulatory bodies and that the purchase of Eastern's stock by Safeway be part of a concurrent merger of the two companies. At the time the contract referred to above was made, September 16, 1939, petitioner owned 90.7 per cent of the outstanding capital stock of Eastern and owned 392 shares of Safeway's outstanding capital stock of 800 shares. On or about October 22, 1940, petitioner sold substantially all of his stock in Safeway to the other stockholders of that company, and he further granted a proxy in his Eastern stock to C. P. Schnebly, who was the president *49 and general manager of Safeway. In addition he granted Schnebly an option to purchase the 700 Safeway shares he was to receive upon consummation of the September 1939 agreement. Eastern was operated under the control of Schnebly, a member of Safeway's board of directors, from October 22, 1940 to May 1942, at which time the stock proxy was returned to petitioner. During that period Eastern's operations, which were under the control of Safeway acting through Schnebly, resulted in Eastern sustaining severe operating and capital losses and a decline in net worth. Subsequent to the merger of Nevin Transit, Inc. into Eastern, on numerous occasions petitioner tendered to Safeway all of his stock in Eastern in accordance with the agreement of September 16, 1939 and demanded Safeway's performance of that agreement, namely, delivery of 700 shares of the common capital stock of Safeway, but the latter company refused at all times to comply with the terms of the contract. On May 15, 1942, petitioner sold or transferred to T. Milen Rhodes one-half of his stockholdings in Eastern and assigned to Rhodes one-half interest in the agreement of September 16, 1939, and Rhodes assumed the obligations *50 of petitioner under that agreement to the extent of one-half thereof. On his tax return for 1942 petitioner claimed, and was allowed, a loss of $10,000 on the sale of stock to Rhodes. On or about October 31, 1942, both Rhodes and petitioner made a final joint offer to Safeway to turn over to it all of the stock of Eastern and demanded in return the consideration mentioned in the September 16, 1939 agreement. This offer was refused, whereupon suit was commenced by petitioner, T. Milen Rhodes, and Eastern against Safeway in the United States District Court, Southern District of New York. The complaint in that proceeding read in part: "FIFTH: That after the merger of Nevin Transit, Inc. into Eastern Trails, Inc., and at many times thereafter, plaintiff, Greenleaf, tendered to defendant the one thousand one hundred (1,100) shares of the common capital stock of Eastern Trails, Inc., in accordance with the agreement of September 16, 1939, and demanded the consideration therefor, to wit, seven hundred (700) shares of Safeway Trails, Inc.; but defendant has failed and refused to at all times, and still does fail and refuse to comply with said contract and with the demand of the plaintiff. *51 "SIXTH: That plaintiff, Greenleaf, has sold and transferred to plaintiff, T. Milen Rhodes, one-half of Greenleaf's stockholdings in Eastern Trails, Inc. and has assigned to plaintiff, Rhodes, one-half interest in the agreement of September 16, 1939, and said plaintiff, Rhodes, has assumed the obligations of Greenleaf under said agreement to the extent of one-half thereof, of all of which due notice was given defendant. * * *
"EIGHTH: That plaintiffs are ready, willing and able to transfer to defendant all of the common capital stock of Eastern Trails, Inc. in exchange for the consideration therefor, to wit, the seven hundred (700) shares of the capital stock of Safeway Trails, Inc. in accordance with the agreement of September 16, 1939. * * *
"Plaintiffs, Aaron E. Greenleaf and T. Milen Rhodes, demand the following judgment: "1. That a decree of specific performance of the agreement of September 16, 1939 be granted plaintiffs, and that defendant be directed to issue and deliver to plaintiffs seven hundred (700) shares of its common capital stock of the par value of Fifty ($50.00) Dollars each free and clear of all encumbrances, in exchange for the consideration tendered *52 by plaintiffs of one thousand one hundred (1,100) shares of the common capital stock of Eastern Trails, Inc. * * *
"3. That in addition to such decree of specific performance requested herein, that plaintiffs have further judgment against the defendant for the amount of Fifty thousand ($50,000.00) Dollars damages resulting from defendant's breach of the contract of September 16, 1939 and resulting from the ensuing delay in securing said seven hundred (700) shares of stock." The district court dismissed the above-mentioned action, stating that the contract was incapable of performance. After appeal of the decision to the Court of Appeals, Second Circuit, the case was settled by an agreement between the parties whereby Safeway paid to Rhodes and petitioner $56,000 in full settlement of their claims, which included the above-mentioned claim for damages and also a separate suit involving indebtedness not relevant in this proceeding. The memorandum of agreement, dated April 27, 1944, reads in part: "MEMORANDUM of settlement agreement between Shereff Brothers, Esqs., on behalf of their clients, Aaron E. Greenleaf, T. Milen Rhodes and Eastern Trails, Inc.; and Olcott, Havens, Wandless *53 & Stitt, Esqs., on behalf of their client, Safeway Trails, Inc., as follows: "1. In action No. 1 [the action to collect sums allegedly owed to petitioner], by Aaron E. Greenleaf against Safeway Trails, Inc. will withdraw its petition for writ of certiorari to the United States Supreme Court, and the action is to be discontinued without costs to either party. "2. In action No. 2 [the action for specific performance and/or damages for breach of contract], by Aaron E. Greenleaf, T. Milen Rhodes and Eastern Trails, Inc. against Safeway Trails, Inc., plaintiffs agree to withdraw and discontinue their appeal, defendant agrees to satisfy the judgment for costs against plaintiffs. "3. Safeway Trails, Inc. agrees to pay Rhodes and Greenleaf Fifty-six thousand ($56,000.00) Dollars in cash in full settlement of all claims of any nature and description against it. "4. Greenleaf, Rhodes and Eastern Trails, Inc. are to give general releases to Safeway Trails, Inc. Safeway Trails, Inc. is to give general releases to Greenleaf, Rhodes and Eastern Trails, Inc." The parties stipulated that the net amount received by petitioner as his share of the settlement, after payment of expenses and *54 attorney fees, and after excluding the amount of the settlement of the suit to collect sums allegedly owed to petitioner, was $18,621.59 on account of the claim for damages for breach of contract involved in the above-mentioned suit. This amount was received by the petitioner in 1944 and he included it in his return for that year as a long term gain on the sale of capital assets. Opinion The questions for decision are whether an amount of $18,621.59 received by petitioner in settlement of a suit for damages for breach of contract and/or specific performance thereof constituted ordinary income as determined by respondent, or, as contended by petitioner, constituted either a reimbursement for a capital loss or, alternatively, a capital gain resulting from the sale of capital assets. Briefly, the facts in respect to petitioner and Safeway show that on September 16, 1939, those parties entered into an executory contract whereby petitioner agreed to sell his shares of Eastern stock to Safeway and the latter agreed to purchase such stock for a consideration of 700 shares of its own capital stock; that petitioner tendered his Eastern stock in fulfillment of his obligation under the *55 contract; that Safeway continuously refused to honor its obligation under the contract; that petitioner brought suit against Safeway in 1942 for specific performance and for damages for breach of contract; and that following dismissal of the suit and appeal thereon by petitioner the parties entered into a settlement agreement in 1944 whereby petitioner received a net amount of $18,621.59 on account of damages for Safeway's breach of contract. The facts further show that in the interim and apparently through mismanagement of Eastern's affairs by Safeway acting through Schnebly, who held petitioner's proxy on his shares of stock in Eastern, the latter sustained severe operating and capital losses and a reduction in its net worth. Petitioner contends that losses suffered by Eastern resulted in a decline in the value of petitioner's shares of stock in Eastern; that such decline in value was understood by the parties to be a major reason for the settlement of the suit; and that the damages received constituted reimbursement for loss of capital and therefore not income. The settlement agreement discloses that it encompassed nothing more than a payment to discontinue two suits, one an action *56 to collect sums allegedly owed petitioner, and the other an action for specific performance and/or damages for breach of contract. There is no showing that the decline in Eastern's net worth was considered by Safeway or petitioner in effecting the settlement in question. Furthermore, in connection with the suit for damages, the petitioner did not sell or otherwise dispose of his capital asset represented by shares of Eastern's stock. Accordingly, the settlement did not involve a capital transaction in which petitioner realized either a capital loss, for which reimbursement could have been made, as petitioner contends, or a capital gain. This Court, following the decision in , has heretofore held that an amount realized as liquidated damages for failure of another to complete a contract of sale, such as we have here, constitutes gain taxable as ordinary income. . Cf. ; remanded July 23, 1937 (C.C.A. 7th) without opinion pursuant to stipulation by the parties. Respondent's determination is sustained. Decision will be entered *57 for the respondent.